JOHN WALTON *v.* DONALD BURDICK ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued March 5—decision released May 12, 1981

*James M. Kirker,* for the appellants (defendants).

*Peter B. Benedict,* with whom, on the brief, was *Ross S. Rapaport,* for the appellee (plaintiff).

PARSKEY, J. This action is a challenge to the procedure used by the defendants, who are the selectmen, registrars of voters and moderator of the town of Griswold, to form a police tax district. The district was to be composed of the town of Griswold excluding the borough of Jewett City which lies within the town. Pursuant to General Statutes § 7-325[1] a petition by twenty or more voters who

---

[1] "[General Statutes] Sec. 7-325. ORGANIZATION. Upon the petition of twenty or more voters, as defined by section 7-6, of any town, not residing within the territorial limits of any city or borough in such town, specifying the limits of a proposed district for any or all of the purposes set forth in section 7-326, and not including within such limits any part of any city or borough in such town, the selectmen of such town shall call a meeting of the voters residing within such specified limits to act upon such petition, which meeting shall be held at such place within such town and such hour as the selectmen designate, within thirty days after such petition has been received by such selectmen. Such meeting shall be called by posting a written notice of the same, signed by the selectmen, upon some public signpost within such town and also in some prominent place within such proposed district, at least fourteen days before the time fixed for such meeting, and by advertising such notice in two successive issues of some newspaper published or circulated in such town. Upon approval of such petition by such meeting, the voters may name the district and choose necessary officers therefor to hold office until the first annual meeting thereof; and the district shall thereupon be a body corporate and politic and have the powers, not inconsistent with the general statutes, in relation to the objects for which it was established, that are necessary for the accomplishment of such objects, including the power to lay and collect taxes. The clerk of such district shall cause its name and a description of its territorial limits and of any additions that may be made thereto to be recorded in the land records of the town in which such district is located."

did not reside within a city or borough of the town was presented to the board of selectmen. At a special town meeting called by the selectmen to act on the petition, qualified taxpayers who did not reside in the town were allowed to vote on the petition. This meeting was adjourned for eight days, until April 30, 1980, when another vote was taken by paper ballot. The town moderator ruled that non-resident taxpayers would again be eligible to vote.

The plaintiff, a resident of the town and of the proposed district, began this action on April 24, 1980, to enjoin the defendants from conducting the April 30, 1980, vote and from proceeding any further in the matter. By agreement of the parties two issues were to be determined: (1) may a qualified taxpayer, as defined by General Statutes § 7-6,[2] who is not a town resident vote at a meeting called to consider the establishment of a police tax district; and (2) may a referendum be held on the proposed establishment of a tax district pursuant to § 7-325. The trial court resolved both issues in the negative and rendered appropriate equitable relief in the plaintiff's favor. The defendants have appealed, claiming that both issues were wrongly decided.

The defendants' contention that any voter as defined by § 7-6 is entitled to participate in the

[2] "[General Statutes] Sec. 7-6. ELIGIBILITY TO VOTE. At any town meeting other than a regular or special town election or at any meeting of any fire, sewer or school district or any other municipal subdivision of any town incorporated by any special act, any person who is an elector of such town may vote and any citizen of the age of eighteen years or more who, jointly or severally, is liable to the town, district or subdivision for taxes assessed against him on an assessment of not less than one thousand dollars on the last-completed grand list of such town, district or subdivision, or who would be so liable if not entitled to an exemption under subdivision (17), (19), (22), (23), (25) or (26) of section 12-81, may vote, unless restricted by the provisions of any special act relating to such town, district or subdivision."

§ 7-325 organizational meeting fails in light of the plain legislative directive to the contrary. The procedure for organizing a police district is set forth in § 7-325. An organizational meeting must be called upon the petition of twenty or more "voters, as defined by section 7-6," of a town. The term "voters" is defined in § 7-6 to include both electors and qualified taxpayers. A petitioner need not reside in nor own taxable property in the proposed district. Petitioners under § 7-325 may not, however, reside within a city or borough of the town. Participation at the organizational meeting called to act on the petition is limited by the statute to "voters residing within" the area of the proposed district. The purpose of the meeting is to determine whether to create the proposed district. Once the petition is approved, the organizing voters may then proceed to name the district and to choose necessary officers to hold office until the first annual meeting of the district. On the basis of § 7-325, we conclude that only voters[3] residing within the area of the proposed district may vote at the organizational meeting.

To avoid this result, the defendants contend that the words "residing within such specified limits" do not modify or restrict the word "voters," but rather serve only to limit participation at the organizational meeting to electors and nonresident qualified taxpayers who own property within the boundaries of the proposed district. This view is plainly unwarranted by the clear language of § 7-325.

---

[3] Because we view the organizing procedure as being controlled completely by § 7-325, the definition of "voter" in § 9-1 (u), which refers to the broad § 7-6 definition, is not material to our interpretation of § 7-325. Moreover, the § 9-1 definitions apply only to the sections enumerated therein; § 7-325 is not included in this list. General Statutes § 9-1.

The defendants' second contention on appeal is that the question of whether the police tax district is to be created can be the subject of a referendum. Relying on the definition of "referendum" in § 9-1 (n),[4] the defendants argue that the creation of a police district is "a question or proposal which is submitted to a vote of the electors or voters, as the case may be, of a municipality at a meeting of such electors or voters pursuant to section 7-7."[5] General Statutes § 9-1 (n) (3). We agree with the

---

[4] General Statutes § 9-1 (n): "(n) 'Referendum' means (1) a question or proposal which is submitted to a vote of the electors of a municipality at any regular or special state or municipal election, as defined in this section, (2) a question or proposal which is submitted to a vote of the electors or voters, as the case may be, of a municipality at a meeting of such electors or voters, which meeting is not an election, as defined in subsection (d) of this section, and is not a town meeting, or (3) a question or proposal which is submitted to a vote of the electors or voters, as the case may be, of a municipality at a meeting of such electors or voters pursuant to section 7-7."

[5] Section 7-7 provides in pertinent part: "[a]ll towns, when lawfully assembled for any purpose other than the election of town officers, and all societies and other municipal corporations when lawfully assembled, shall choose a moderator to preside at such meetings, unless otherwise provided by law; and, except as otherwise provided by law, all questions arising in such meetings shall be decided in accordance with standard parliamentary practice, and towns, societies and municipal corporations may, by ordinance, adopt rules of order for the conduct of their meetings. . . . Two hundred or more persons or ten per cent of the total number qualified to vote in the meeting of a town or other municipal corporation, whichever is less, may petition the clerk or secretary of such town or municipal corporation, in writing, at least twenty-four hours prior to any such meeting, requesting that any item or items on the call of such meeting be submitted to the persons qualified to vote in such meeting not less than seven nor more than fourteen days thereafter, on a day to be set by the town meeting or, if the town meeting does not set a date, by the town selectmen, for a vote by paper ballots or by a 'Yes' or 'No' vote on the voting machines, during the hours between twelve noon and eight p.m.; but any municipality may, any provision of any special act to the contrary notwithstanding, by vote of its legislative body provide for an earlier hour for opening the polls but not earlier than six a.m."

trial court that, because no police tax district exists until a petition is approved at the § 7-325 meeting, no municipality or other body politic exists for purposes of either § 9-1 (n) (3) or § 7-7. Section 7-325 details a cogent, comprehensive mechanism that is well tailored to meet the needs of local residents attempting to form a body politic. The interjection of referendum procedures into the formation process, as suggested by the defendants, finds no support in the statutory scheme.

There is no error.

In this opinion the other judges concurred.